**Raymond A. JOHANEK, Plaintiff,**

v.

**Joseph ABERLE, Defendant.**

**Civ. No. 2099.**

United States District Court
D. Montana,
Great Falls Division.

March 6, 1961.

Jardine, Stephenson, Blewett & Weaver, Great Falls, Mont., for plaintiff.

Orin R. Cure, and Edward W. Borer, Great Falls, Mont., for defendant.

JAMESON, District Judge.

Plaintiff seeks damages for personal injuries sustained in an accident on April 5, 1959, when plaintiff was riding as a gratuitous passenger or guest in an automobile owned by Jerry L. Johnson and being driven by the defendant.

Plaintiff has submitted interrogatories pursuant to Rule 33 of the Federal Rules of Civil Procedure, 28 U.S.C.A. seeking to ascertain whether defendant was covered by a policy of liability insurance at the time of the accident; and if so, the identity of the insurer, limits of liability, and terms of the policy, including, inter alia, whether the policy provides for medical reimbursement for injuries sustained by occupants of the insured car. Defendant has objected to the interrogatories upon the ground that the information sought is "immaterial, irrelevant, outside of all the lawful issues, and does not relate to the matter which can be inquired into under Rule 33".

Rule 33 provides that "interrogatories may relate to any matters which can be inquired into under Rule 26(b)". Rule 26(b) provides that " * * * the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of relevant facts. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence."

The primary question presented is whether the matter of the existence, terms and limits of automobile liability insurance is "relevant to the subject matter" involved in plaintiff's personal injury action against the defendant. The defendant agrees that in the event plaintiff should recover a judgment, discovery with regard to insurance coverage would then be proper, but argues that the existence of insurance coverage and the terms thereof are not relevant to any issue in the present action, could not lead to the discovery of admissible evidence, and could have no possible bearing upon the determination of the present action on the merits.

Plaintiff contends that the clause "relevant to the subject matter involved in the pending action" is not limited to "relevancy to the issues";[1] that relevancy as used in Rule 26(b) is not to be equated with "relevant" as ordinarily used in determining admissibility of evidence upon a trial; and that under the

---

[1] It is clear that the scope of inquiry under Rule 26(b) "should not be limited to matters relevant only to the precise issues presented by the pleadings". 4

Moore's Fed.Practice 1065, § 2616. See also 2 Barron & Holtzoff § 647; Notes of Advisory Committee on Amendment to Rules, 28 U.S.C.A. Rule 26(b).

broad term of relevancy of subject matter, insurance coverage is relevant to an action between an injured party and an insured defendant.

There is a sharp conflict in the authorities in both federal and state courts with regard to the right of discovery of insurance information prior to judgment in a personal injury action, with the courts almost evenly divided.[2] Different reasons have been assigned both for permitting and denying discovery, some based upon statutory provisions. Plausible reasons support both conclusions.

Several decisions have considered the effect of financial responsibility laws, and it seems advisable at the outset to call attention to the provisions of the Montana Motor Vehicle Safety-Responsibility law, a uniform act adopted in 1951 (Chapter 104, Session Laws 1951) R.C. M.1947, § 53–418 et seq. This law provides, inter alia, that whenever an operator of a motor vehicle is involved in an accident where a person is injured or killed, or where property damage exceeds $100, a report shall be filed with the supervisor of the highway patrol containing information to enable the supervisor to determine whether the operator is financially responsible to respond in damages resulting from the accident. The supervisor may require that the operator deposit a bond or other security sufficient to satisfy any judgment, unless the operator had an automobile liability insurance policy with the required limits at the time of the accident. Unless the security is furnished or an insurance policy is in effect, the operator's license may be cancelled. Section 53–438(f), R.C.M.1947, as amended, provides:

"Every motor vehicle liability policy shall be subject to the following provisions which need not be contained therein:

"1. The liability of the insurance carrier with respect to the insurance required by this Act shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurred; said policy may not be cancelled or annulled as to such liability by any agreement between the insurance carrier and the insured after the occurrence of the injury or damage; no statement made by the insured or on his behalf and no violation of said policy shall defeat or void said policy;

"2. The satisfaction by the insured of a judgment for such injury or damage shall not be a condition precedent to the right or duty of the insurance carrier to make payment on account of such injury or damage;

"3. The insurance carrier shall have the right to settle any claim covered by the policy, and if such settlement is made in good faith, the amount thereof shall be deductible

2. Cases permitting discovery include Brackett v. Woodall Food Products, Inc., D.C.E.D.S.D.Tenn.1951, 12 F.R.D. 4; Hurt v. Cooper, D.C.W.D.Ky.1959, 175 F.Supp. 712; Orgel v. McCurdy, D.C. S.D.N.Y.1948, 8 F.R.D. 585; Superior Insurance Co. v. Superior Court, 1951, 37 Cal.2d 749, 235 P.2d 833; Pettie v. Superior Court, 1960, 178 Cal.App.2d 680, 3 Cal.Rptr. 267; Maddox v. Grauman, Ky.1954, 265 S.W.2d 939, 41 A.L.R. 2d 964; Lucas v. District Court, 1959, 140 Colo. 510, 345 P.2d 1064; People ex rel. Terry v. Fisher, 1957, 12 Ill. 2d 231, 145 N.E.2d 588. Cases denying discovery include McNelly v. Perry, D.C.

E.D.Tenn.1955, 18 F.R.D. 360; Roembke v. Wisdom, D.C.S.D.Ill.1958, 22 F.R.D. 197; Gallimore v. Dye, D.C.E.D.Ill.1958, 21 F.R.D. 283; McClure v. Boeger, D.C. E.D.Pa.1952, 105 F.Supp. 612; Jeppeson v. Swanson, 1955, 243 Minn. 547, 68 N.W.2d 649; Brooks v. Owens, Fla. 1957, 97 So.2d 693; State ex rel. Allen v. Second Judicial District Court, 1952, 69 Nev. 196, 245 P.2d 999; Peters v. Webb, Okl.1957, 316 P.2d 170; Di-Pietruntonio v. Superior Court, 1958, 84 Ariz. 291, 327 P.2d 746; Vernastro v. Grecco, 21 Conn.Sup. 165, 149 A.2d 703; Ruark v. Smith, 1 Storey, Del., 420, 147 A.2d 514.

from the limits of liability specified in Subdivision 2 of Subsection (b) of this Section;"[3]

The courts are not in accord with respect to the effect of financial responsibility laws on the right of discovery of insurance information. Some courts have held that such laws evidence a public policy of providing compensation for injured persons and thus give such persons a "discoverable interest" in the policy.

In Brackett v. Woodall Food Products, Inc., D.C.E.D.S.D.Tenn.1951, 12 F.R.D. 4, 6, the court said: "From the tenor and purpose of such legislation (referring to legislation similar to the Montana Motor Vehicle Safety-Responsibility Act and the Federal Motor Carrier Act and regulations of the I.C.C. requiring liability insurance or similar protection) it is obvious that such insurance policies are definitely relevant to the subject matter of pending actions growing out of accidents covered by such policies, especially in view of the fact that this legislation apparently would require the defendant to disclose to the state authority the information concerning the insurance which plaintiffs seek, and this would be a matter of public record."

The Supreme Court of Colorado reached the same conclusion in Lucas v. District Court, 1959, 345 P.2d 1064, 1067, and, referring to the Colorado Safety Responsibility Law, said in part: "In general, the purpose of the provisions cited is to foster and promote insurance coverage or, in the event of accident, a bond to insure financial responsibility. Its ultimate object is to provide compensation for innocent persons who might be injured through faulty operation of motor vehicles."

On the other hand, the Supreme Court of Nevada in State ex rel. Allen v. Second Judicial District Court, 1952, 69 Nev. 196, 245 P.2d 999, concluded that under a similar financial responsibility law the injured party had no discoverable interest in the policy until after judgment.[4]

One of the early cases permitting discovery was the California case of Superior Insurance Co. v. Superior Court, 1951, 37 Cal.2d 749, 235 P.2d 833, where, in a proceeding for the perpetuation of testimony, the court considered the effect of a statute providing in part that a policy of liability insurance shall not be issued unless it contains a provision * * * against loss or damage resulting from liability for injury suffered by another * * * and "a provision that whenever judgment is secured against the insured * * * in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy * * * to recover on the judgment".[5] The Supreme Court of California held that this section created a contractual relation between the insurer under an automobile liability insurance policy and third persons who may be negligently injured by the insured; that the provisions of the policy, therefore, are not a matter for the sole knowledge of the named insured to the exclusion of the injured person; and that the "very pendency of an action by the injured person brought in good faith against the named insured person gives the former a discoverable interest in the policy".[6]

---

3. By statute (Section 8–113, R.C.M.1947) and regulations pursuant thereto motor carriers for hire are required to file policies of liability insurance.

4. See also dissenting opinion in Lucas v. District Court, supra. 345 P.2d 1064.

5. California Insurance Code, § 11580.

6. The California courts more recently have reached the same conclusion in proceedings under the present California discovery statutes, which are based largely upon the Federal Rules of Civil Procedure. Laddon v. Superior Court, 1959, 167 Cal.App.2d 391, 334 P.2d 638, 639; Pettie v. Superior Court, 1960, 178 Cal. App.2d 680, 3 Cal.Rptr. 267.

The Supreme Court of Illinois permitted discovery with respect to policy limits in a comprehensive and well considered opinion in People ex rel. Terry v. Fisher, 1957, 12 Ill.2d 231, 145 N.E.2d 588, 593, relying in part upon a statute similar to the California statute quoted above, and a statute requiring motor carriers to have specified liability insurance policies before permits may be issued. On this point the court said: "Such statutory requirements render insurance policies relevant to the litigation against the insured defendant, in that they apprise injured plaintiffs of rights in the matter of litigation of which they might not otherwise avail themselves. It is not inconceivable that a plaintiff with serious injuries would settle a substantial judgment against a defendant of modest means for a fractional sum, simply because he had no knowledge of any additional rights against the insurer. Thus, to deprive an injured party from learning of his rights against an insurer would, in effect, nullify the benevolent purpose of such statutes, and permit insurance companies to avoid their statutory obligation."

Many of the decisions denying discovery point out the absence of a statute comparable to California Insurance Code, § 11580.[7] Montana does not have such a statute. It should be noted, however, that the standard automobile liability insurance policy used by most insurance companies has for many years included provisions essentially the same as those required for policies issued in California and Illinois. In Volume I, Insurance Policy Annotations, 1941, published by the Section of Insurance Law of the American Bar Association, are set forth the provisions of a standard automobile liability insurance policy, including (at page 108) Condition No. 7 which provides as follows: "No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the conditions hereof, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company."

"*Any person or his legal representative who has secured such judgment or written agreement shall thereafter be entitled to recover under the terms of this policy in the same manner and to the same extent as the insured.* Nothing contained in this policy shall give any person or organization any right to join the company as a co-defendant in any action against the insured to determine the insured's liability."[8] (Emphasis supplied.)

While there may here be no discoverable interest by virtue of any statutory requirement, a discoverable interest may nevertheless inure to an injured party by virtue of the same provision in the standard policy itself. Whether based upon the statutory requirement or the provisions of the standard policy, the injured party may not institute any action against the insurer until after judgment. After judgment he has the same right of action under the standard policy as he would have under the statute. The same reasoning applies in permitting him to ascertain the policy provisions in the personal injury action.

It is conceded here that plaintiff seeks discovery to aid plaintiff and his counsel

---

7. See Brooks v. Owens, supra; Jeppeson v. Swanson, supra; Peters v. Webb, supra; DiPietruntonio v. Superior Court, supra; State ex rel. Allen v. District Court, supra.

8. Substantially the same provisions appear in the October, 1946 Supplement and also as a part of the 1947 and 1955 standard basic automobile liability policy prepared and adopted for use generally by the National Bureau of Casualty Underwriters and the American Mutual Alliance, representing many of the large stock and mutual casualty companies.

to appraise the case for settlement purposes, and it is suggested that the disclosure of the insurance information may lead to a settlement.[9]  It is argued that one of the purposes of the discovery rules is to effectuate the prompt and just disposition of litigation, that insurance information will aid the parties in determining the value of their case in advance of trial, and that under a liberal construction of the rules discovery with regard thereto should be permitted.  The decisions are in conflict on this point.

A leading and well reasoned case denying discovery is Jeppeson v. Swanson, 1955, 243 Minn. 547, 68 N.W.2d 649, 658, where the court said in part:

"That does not mean that information should be discoverable which is desired only for the purpose of placing one party in a more strategic position than he otherwise would be by acquiring information that has nothing to do with the merits of the action.  There must be some connection between the information sought and the action itself before it becomes discoverable.

"Under the guise of liberal construction, we should not emasculate the rules by permitting something which never was intended or was not within the declared objects for which they were adopted.  Neither should expedience or the desire to dispose of lawsuits without trial, however desirable that may be from the standpoint of relieving congested calendars, be permitted to cause us to lose sight of the limitations of the discovery rules or the boundaries beyond which we should not go.  If, perchance, we have the power under the enabling act to extend the discovery rules to permit discovery of information desired for the sole purpose of encouraging or assisting in negotiations for settlement of tort claims, it would be far better to amend the rules so as to state what may and what may not be done in that field than to stretch the present discovery rules so as to accomplish something which the language of the rules does not permit." [10]

9.  Defendant contends that Orgel v. McCurdy, et al., supra, 8 F.R.D. 585, 586, is distinguishable for the reason that it appeared that one of the issues involved in that case was whether the motor vehicle was under defendant's operation and control and that disclosure of insurance information would be relevant on this issue, although the court permitted the discovery on the ground that it "may be generally relevant to the issues in the case".  In the case of Layton v. Cregan & Malory Co., 263 Mich. 30, 248 N.W. 539, it was held that the existence of insurance coverage was a proper discovery inquiry where ownership of the vehicle was at issue.

10.  A dissenting opinion quotes from "an able summary on the issue * * * by Professor Wright in his Commentary to Rule 26 set forth in Wright, Minnesota Rules, page 164, wherein he states: * * * If the requirement of relevancy is to be given the broad interpretation argued for in section 3 of this Commen-

tary, it must be said that insurance coverage is 'relevant'; as a practical matter, a plaintiff's attorney may be more interested in knowing about insurance coverage than he is even in knowing the facts on liability.  To say that insurance is irrelevant would be patently unrealistic.  Further, knowledge of the extent of insurance coverage should aid the objectives of Rule 1 by leading to more purposeful discussions of settlement, and thus helping eliminate court congestion and ensuring the more speedy and inexpensive determination of many controversies.

"On the other hand, the language in Rule 26.02 that testimony obtained must appear 'reasonably calculated to lead to the discovery of admissible evidence' is extremely troublesome.  What admissible evidence can possibly result from knowledge of defendant's insurance coverage?

" * * * we are impressed by the fact that a decisive majority of experienced Minnesota judges have held such discov-

It is a well recognized fact, however, that where there is insurance coverage the insurer takes control of the defense of any action brought against one of its insured. The insurer not only defends the suit, but also makes such investigation, negotiations and settlement as it deems expedient. The standard policies expressly so provide. This fact may properly be taken into consideration in determining whether plaintiff should be permitted discovery relative to insurance information. As the Supreme Court of Illinois well said in People ex rel. Terry v. Fisher, supra, 12 Ill.2d 231, 145 N.E.2d 593: "In determining whether liability insurance is discoverable by pretrial interrogatories, we must also take cognizance of the role of insurance companies in such litigation against their insured, for as Justice Holmes noted, 'Judges need not be more naive than other men.' Inasmuch as the insurance company is virtually substituted as a party (citing cases), as far as the investigation and conduct of the defense is concerned, it would seem to be relevant, if not indispensable, that plaintiff's attorney have knowledge of the existence of insurance in order to prepare for the case he has to meet and be apprised of his real adversary. Such knowledge, furthermore, would also lead to more purposeful discussions of settlement, and thereby effectuate the dispatch of court business. This aspect is more significant in terms of effective judicial administration in coping with today's congested dockets which are largely attributable to the increasing volume of personal injury litigation." [11]

Many of the cases denying discovery suggest that if discovery is permitted with regard to insurance coverage there is no reason why a defendant may not be required to disclose similar information with regard to other property. In Gallimore v. Dye, supra, 21 F.R.D. 283, 285 for example, the court said: "If the plaintiff is permitted to discover the existence, amount, and provisions of liability coverage under the discovery provisions of Federal Rules prior to liability having been determined against the defendant, then it could logically follow that he should be permitted the same latitude in discovery of the defendant's other assets, such as stocks, bonds, real estate, bank account, and in general the total assets of the defendant of whatever nature or kind."

In my opinion, however, automobile liability insurance protection is not in the same category as other assets of the insured. As the Supreme Court of Illinois said in People ex rel. Terry v. Fisher, supra, 145 N.E.2d 588, 592, 593: "Unlike other assets, a liability insurance policy exists for the single purpose of satisfying the liability that it covers. It has no other function and no other value * * * Ordinarily a plaintiff has many sources of inquiry by means of which he can appraise the likelihood that the judgment he seeks will be enforceable. In the case of an insurance policy, however, all the customary channels are cut off. Even if he knows the identity of the insurance company and may know its financial standing, it does not help him, for the company is responsible only within the limits of the policy it has issued." Particularly in view of the financial responsibility law in Montana and the provisions of the standard insurance policy, discussed supra, "an insurance contract is no longer a secret, private, confidential arrangement between the insurance carrier and the individual, but it is an agreement that embraces those

---

ery proper. We are impressed, too, by the strong decision from the California Supreme Court discussed earlier. A decision in point from so authoritative a court will carry great weight."

11. This paragraph was quoted with approval by the California court in Pettie v. Superior Court, supra, and by the Colorado court in Lucas v. District Court, supra.

whose person or property may be injured by the negligent act of the insured."[12] It does not necessarily follow that to permit discovery as to insurance coverage would require similar discovery as to other assets of the insured.

One of the interrogatories to which objection has been interposed inquires whether the policy (if there be one) provides for medical payments for injuries sustained by occupants of the automobile and the limits of such coverage. In McClure v. Boeger, D.C.E.D.Pa.1952, 105 F.Supp. 612, 613, the court, in denying the plaintiff's request under Rule 34 for production of the policy, suggested that "any right of that kind (reimbursement for medical expenses) which the plaintiff might have arises out of contract, is entirely different from the right which he is asserting against this defendant and cannot affect the position of either party in this suit."

The plaintiff here was an occupant of the automobile defendant was driving and seeks recovery of medical and hospital expenses.[13] Certainly with respect to any medical or hospital expenses actually paid by the plaintiff as a result of the accident, the policy provisions relating to medical reimbursement would be relevant. Yet to ascertain that fact it would be necessary first to determine whether there was in fact an insurance policy. Nor is it necessary to obtain a judgment against the insured before proceeding against the insurer on a medical reimbursement provision. To conclude that these provisions are not discoverable might well result in relegating the plaintiff to another action against an insurer whose identity is unknown on a contract of insurance, the terms of which are also unknown.

In many of the cases it is apparent that the arguments against discovery are advanced on behalf of the insurance carrier rather than the insured defendant.[14] It is assumed, however, that in the event there is insurance coverage in the instant case the defendant has been apprised of the interrogatories and has no objection to the refusal to disclose the requested information relative to insurance coverage.[15] Even if there is insurance, there is, of course, no controversy at this time between the defendant and any insurer. It is conceivable, however, that a controversy may later arise in this and similar cases. Accordingly, while not perti-

12. Maddox v. Grauman, supra, 265 S.W. 2d 942.

13. There is a further question in this case with regard to plaintiff's right to recover for medical and hospital treatment furnished by military personnel and hospitals for which no charge was made to plaintiff.

14. For example, in Brooks v. Owens, Fla. 1957, 97 So.2d 693 at page 695, it is said: "Defendant also contends that if the discovery be allowed, the plaintiff would be in a position to 'entrap' the defendant insurance carrier into the position whereby it could have asserted against it a claim for damages returned by the jury in excess of the policy limits due to its bad faith refusal to compromise within the policy limits. Defendant maintains that the sole purpose of plaintiff's request for the policy limits is to place him in a position to bring about such a result."

This is not an argument on behalf of the insured defendant but rather on behalf of his insurance carrier. Moreover, the contention is of questionable merit. Ordinarily it is not the *disclosure* of policy limits which may tend to subject the insurer to liability in excess of the policy limits, but rather the *failure to disclose* the limits, thereby foreclosing the possibility of receiving an offer within the policy limits.

15. See Statement of Principles issued by American Bar Association Conference Committee on Adjusters, paragraph 4 (b). This statement has been approved by American Bar Association, American Mutual Alliance, Association of Casualty and Surety Companies, National Board of Fire Underwriters, and other insurance organizations.

nent to this decision, it seems advisable to call attention to the possibility that a refusal to disclose policy limits may in some cases result in liability on the part of the insurer in excess of its policy limits. An article by John Alan Appleman entitled "Circumstances Creating Excess Liability", appearing in the 1960 proceedings of the Section of Insurance, Negligence and Compensation Law of the American Bar Association, page 315, contains the following statement:

"A fifth situation is closing the door to settlement negotiations by refusal to disclose the policy limits. * * * The company has no right to protect itself from excess liability by stating that it will not disclose its policy limits, when such effectively forecloses the possibility of receiving an offer of less than the policy limits. Such constitutes bad faith exercised in complete derogation of the rights of the policy holder. Many states now require the disclosure of policy limits; but, even in those jurisdictions which do not, the company is playing with fire when it cuts off the possibility of receiving an offer within the policy limits by its refusal to open the door to reasonable negotiations."

It is well settled that under the Montana law it is not permissible to convey to the jury the fact that a defendant in a tort action is protected by liability insurance.[16] This in itself, however, would not preclude discovery with regard to insurance coverage. The test is not whether the information sought would be admissible in evidence or relevant to the precise issues in the case, but whether it is "relevant to the subject matter" involved in the action.

The question is not free from doubt, and persuasive arguments have been advanced by both sides. Particularly in view of the provisions of the Montana Motor Vehicle Safety-Responsibility Act, I agree with the conclusion of the Colorado court that the holding permitting discovery of policy information is the better rule "and the one which is more in accord with the object, purpose and philosophy of the Rules of Civil Procedure", and that, "This will have a tendency to eliminate secrets, mysteries and surprises and should promote disposition of cases without trial and substantially just results in those cases which are tried."[17]

The objections to the interrogatories accordingly are overruled.

---

16. Where an insurance company is not a party to a proceeding, "ordinarily any attempt to convey to the jury the fact that a defendant is indemnified by insurance against loss arising from tortious liability is error". Watkins v. Williams, 132 Mont. 46, 314 P.2d 872, 875.

17. Lucas v. District Court, 345 P.2d 1064, 1070.